HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICOLE and GUY MAEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EVANGER'S DOG AND CAT FOOD CO., INC., and NUTRIPACK, LLC,<br><br>Defendants. | NO. 3:17-cv-05469-RBL<br><br>DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT<br><br>**NOTE ON MOTION CALENDAR: DECEMBER 8, 2017** |

## I. INTRODUCTION

**COME NOW** before this Honorable Court the defendants, **EVANGER'S DOG & CAT FOOD COMPANY, INC.** ("Evanger's") **and NUTRIPACK, LLC** ("Nutripack")(collectively the "Defendants"), by and through their counsel, and move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint for failing to state a claim.

## II. FACTUAL BACKGROUND

The Plaintiffs have filed a 473 paragraph, 28 count Amended Complaint[1] that

---

[1] The Amended Complaint will be referred to as "AC" with appropriate citation to the relevant paragraph.

**DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 1**

3070299.docx

Johnson Graffe Keay
Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

attempts to allege various deficiencies in the Defendants' product quality and marketing accuracy. The Plaintiffs are individual consumers of Evanger's produced pet food products who will seek to represent a class of similarly situated consumers. The Defendants manufacture numerous types of pet foods that use beef, chicken, lamb, fish, and other protein "main ingredients." The Plaintiffs correctly allege that, in the first few months of 2017, Evanger's voluntarily recalled three of its beef-based products after it learned that its beef supplier mixed in pentobarbital-tainted horsemeat with the beef that it shipped to Evanger's. As Plaintiffs correctly allege, these products, which were made from the tainted shipments, were Evanger's "Hunk of Beef au Jus," Evanger's "Braised Beef" and Against the Grain's "Grain Free Pulled Beef with Gravy." (The three recalled products are hereinafter referred to as the "Recalled Products.")

The Plaintiffs allege that five dogs owned by plaintiffs Nicole Mael and Guy Mael became ill and one subsequently died after consuming, on December 31, 2016, Evanger's "Hunk of Beef au Jus" product and Against the Grain's "Grain Free Pulled Beef with Gravy." AC ¶14. Four other plaintiffs make similar claims of pet illness after consuming one of the Recalled Products; the sixth plaintiff's dog did not consume a Recalled Product but had "symptoms consistent with animals" that did (although, unlike the other plaintiffs' pets, the veterinary diagnosis did not even mention pentobarbital; AC ¶143).

The Plaintiffs also allege that Evanger's misrepresented the ingredients in the Recalled Products as "human grade" when, they contend, the ingredients were not human grade but were "inedible" pet food-grade beef that was tainted with pentobarbital. AC ¶ 136. The Plaintiffs allege (in paragraphs too numerous to cite) that the Defendants' products were "adulterated," "misbranded," "contained poisonous pentobarbital," "were made in an unsanitary facility" and "contained remains of animals that did not die by slaughter. *See, e.g.*, ¶¶ 300 and 331.

DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 2

3070299.docx

Johnson Graffe Keay Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

**The Amended Complaint allegations only support claims against Recalled Products**

The AC is fatally deficient, however, because rather than properly plead factually supported claims against each product that the Defendants made, identifying what made each specific product adulterated (i.e., contained pentobarbital or contained animals that did not die by slaughter and are not human grade), the AC creates the broad brush, catch all reference of "Pet Foods."

The AC defines "Pet Foods" in footnote 1 contained in ¶9 on page 3 of the AC (emphasis added):

> As explained in more detail herein, given, *inter alia*, that *the Food and Drug Administration ("FDA") confirmed that none of Evanger's suppliers were inspected by USDA-FSIS*, and that Defendants' meat based products, including beef, chicken, turkey, duck and lamb products, were advertised to be "USDA inspected," "human grade," and/or "organic," among other things, the term "Pet Foods" is defined herein as any meat-based products (i.e. excluding seafood, vegetable-based products) sold under the brand names "Evanger's" or "Against the Grain," and any products with similar labeling that *could have been contaminated* by any meat-based product during the production process."

There are two significant problems with the "Pet Food" allegation. First, it is based on a misstatement of what the FDA actually said. At paragraph 108, the AC "quotes" an FDA release titled "Questions and Answers: Evanger's Dog and Cat Food" and provides in footnote 33 a reference to the FDA website where this document can be found[2]:

> "The FDA's preliminary assessment indicates that ***none*** of [Evanger's] suppliers are USDA-FSIS registered facilities."

What the FDA Q&A actually says, however, is something materially different and much more narrow. This statement says, *in toto*:

---

[2] https://www.fda.gov/AnimalVeterinary/SafetyHealth/ProductSafetyInformation/ucm544348

**DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 3**

3070299.docx

Johnson Graffe Keay Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

**Are any of Evanger's beef suppliers inspected by USDA-FSIS?**

The FDA's preliminary assessment indicates that none of these suppliers are USDA-FSIS registered facilities.

The only "preliminary assessment" was that Evanger's **beef** suppliers were not USDA-FSIS and, therefore, not human grade.  The FDA *never* made any statement, no less "preliminary assessment," "observation," "determination" or "finding" that all of Evanger's "*meat*" suppliers were not USDA-FSIS.  In the face of this, the AC alleges over thirty times that the "Pet Foods" are not "human grade" and/or "are not sourced from USDA inspected facilities."  The AC makes these misrepresentations specifically in paragraphs 137, 139, 157, 158, 159, 160, 188, 190, 200, 202, 213, 244, 247, 248, 249, 263, 269, 286, 290, 300, 312, 350, 356, 359, 388, 394, 395, 401, 404, 434, 437, and 447.  In addition to specific statements, *all* of the Plaintiffs' claims in the AC rely on these misrepresentations as each counts incorporates all previously alleged paragraphs.

In addition, the AC fails to allege *any* facts to support that any "meat" product "Pet Food," other than that the beef used in the Recalled Products contained meat that was not USDA inspected, was "adulterated," "misbranded," "contained poisonous pentobarbital," "was made in an unsanitary facility" or "contained remains of animals that did not die by slaughter."  By their own admission, they seek to bring in Evanger's product that "could have been contaminated," a clear statement that the Plaintiffs lack facts establishing their claims but hope to find something through discovery.

Simply stated, rather than allege facts to support claims against each product, the Plaintiffs indict all Evanger's products because three of these products were made with beef from a supplier who, Evanger's contends[3], mixed in pentobarbital-tainted horsemeat

---

[3]  AC ¶¶ 148-153.

**DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 4**

3070299.docx

Johnson Graffe Keay Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

in two of its beef shipments. It masks this irreparable deficiency by lumping all Evanger's products under the allegation of "Pet Foods."

**FDA "findings," "confirmations" and "determinations"**

In addition to misrepresenting the FDA's statement on Evanger's beef suppliers, the AC also misrepresents the FDA's actions. The Plaintiffs attach as Exhibit D to the AC the FDA's February 14, 2017 "Inspectional Observations" for inspections of Evanger's production facility that the FDA conducted *after* the Mael plaintiffs' alleged purchase and use of Evanger's products that they now claim were tainted with pentobarbital.[4] The AC alleges that the observations reflected conditions that, under the earlier cited definition of "adulterated" (AC 51), caused the "Pet Foods" to be "adulterated."

However, the Inspectional Observations, referred to by its Form Number "483," is just that: a summary of what inspectors *observed* during the inspection. To remove any uncertainty as to the legal effect of these observations, the 483 states directly above the observations: "THIS DOCUMENT LISTS OBSERVATIONS MADE BY THE FDA REPRESENTATIVE(S) DURING THE INSPECTION OF YOUR FACILITY. THEY ARE INSPECTIONAL OBSERVATIONS AND DO NOT REPRESENT A FINAL AGENCY DETERMINATION REGARDING YOUR COMPLIANCE." (Capitalization in the original.) The FDA Form 483 specifically provides that the inspected entity, Evanger's here, who has an objection to an observation "may discuss the objection or action with the FDA representative(s) during the inspection or submit this information to FDA [sic] at the address above." (Original in all caps.) In other words, before an observation becomes a "finding" or "determination," the entity has a chance to explain why the observation is wrong.

---

[4] The FDA obviously conducted these inspections after Evanger's made the Recalled Products or any other "Pet Foods" that Plaintiffs claim to serve as the basis of the AC.

**DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 5**

3070299.docx

Johnson Graffe Keay
Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

In the face of these clear statements, and the fact that the inspection occurred *after* the Recalled Products were made and purchased, the AC alleges, at ¶189 (emphasis added), "the FDA *found* the facilities that manufactured the Pet Foods were in unsanitary condition that contaminated them.[5]"  Like the misrepresentation described above, the AC repeats this misstatement throughout the pleading: paragraphs 202, 213, 226, 229, 263, 269, 300, 312, 359, 366, 404, 411, 447, and 454.

### III. LEGAL AUTHORITY AND ARGUMENT

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. See *Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although the Court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat a Rule 12(c) motion. *Vazquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors,* 266 F.3f 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted).  This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly*).

---

[5]  The AC similarly pleads earlier, AC ¶158, that the FDA "confirmed" the Defendants' facilities were unsanitary.

DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 6

3070299.docx

Johnson Graffe Keay Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

**The only well pled facts relate to the Recalled Products.**

In this case, the AC alleges facts that are truly limited to the Recalled Products. The AC draws it facts from only a few sources: laboratory analysis of a Recalled Product the Maels purchased; veterinarian analysis of the Maels dogs after eating a Recalled Product; anecdotal evidence with some veterinarian analysis of dogs who ate Recalled Products for the Vigliano, Morea, Bertucci and Wiepert plaintiffs; and an FDA statement that, on its face, was limited to Evanger's *beef* products after an investigation into the Recalled Products.

The Plaintiffs attempt to broaden the scope of the AC by alleging Plaintiff Conway's dog got sick after it ate a non-beef, non-Recalled Product. AC ¶143. However, these allegations present, at best, the "possibility" of a claim. Plaintiff Conway's self-reported and self-described "symptoms" suggest a possible relation between Evanger's product and the symptom but there are no facts that 1) establish causation beyond speculation between the food and the symptoms; or 2) establish that, if the food were the cause, the non-beef/non-Recalled Product contained pentobarbital. Noticeably absent here are allegations (similar to the Mael plaintiffs) such as laboratory analysis of the foods or an analysis from a veterinarian stating pentobarbital-tainted food caused the symptoms; Plaintiff Conway alleges that the veterinarian diagnosed "gastroenteritis" but never alleges that the veterinarian attributed this to pentobarbital. Accordingly, what the AC attempts to allege beyond the recalled products is entirely speculation, which cannot serve to state a claim.

The concluding sentence of AC ¶ 158 is representative of Plaintiffs' factually unsupported and overly broad "Pet Food" allegations:

> The Pet Foods are misbranded and adulterated, in violation of state and federal law, because they are not from USDA-inspected, human grade facilities; are made up of animals that died by means other than slaughter; contain poisonous pentobarbital; and were made at Defendants' unsanitary

DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 7

3070299.docx

Johnson Graffe Keay Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

facility that further contaminated them.

As this paragraph demonstrates, *everything*, with the exception of "unsanitary facilities," ties back to the pentobarbital problem that is restricted to the Recalled Products. The AC simply does not allege facts that relate to Evanger's product other than the Recalled Products; and this applies to each and every of the 28 claims that Plaintiffs make.

And, with regard to the allegations of "unsanitary facilities," there are several problems: 1) the FDA "observations" were all made *after* the production and purchase of the Evanger's products about which the Plaintiffs' complain; 2) the observations never identify any product that was being produced during the inspections, never state that any particular product was in fact "adulterated" or state that the conditions in fact "adulterated" any particular Evanger's product; and, 3) the observations were just that, observations and not "findings" or "determinations."  The FDA Form 483 can at best suggest a "possible" claim; whether the "observed" conditions were in fact correct and, if they were, whether they previously existed when the complained-of product was made, is purely speculative.

**Plaintiffs' Claims of "Misrepresentations" are equally unsupported by the "Pet Foods" allegation.**

The "Pet Food" allegation similarly paints with the same factually unsupported brush Plaintiffs' claims of misrepresentation.  The only facts that the Plaintiffs allege are, again, those that are dependent upon the facts relating solely to the Recalled Product. The following paragraphs of the AC are representative:

> 163. Defendants' misrepresentations have occurred in at least three forms, all of which constitute "advertising." These include: (i) product packaging, (ii) materials and information provided to stores that carry Evanger's Pet Foods, and (iii) Evanger's social media and website, which they use to directly sell their Pet Foods to the public, both consumers and retailers. Defendants' pervasive advertising message misrepresents the quality of the Pet Foods and the health risks associated with their consumption.
>
> 164. Defendants knew they received meat-products labeled as "inedible"

DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 8

3070299.docx

Johnson Graffe Keay Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

and "not fit for human consumption" from suppliers that were not USDA-FSIS inspected. Despite this, Evanger's used these meat-products in their Pet Foods that they falsely advertised as "people food for pets" and "USDA-inspected, human grade" quality.

Paragraph 164 relies entirely on the "inedible" and "not USDA-FSIS" allegations that are factually supported only for the Recalled Products.

**All of Plaintiffs' 28 claims are based on the infirm "Pet Foods" allegation.**

Each and every claim is based – *and dependent* – on the Pet Food allegation and the facts on which it is based; and, as demonstrated above, these facts are limited to the Recalled Products.  Accordingly, each and every allegation in the AC, except those relating to the Recalled Products, fails to state a claim against any Evanger's product other than the Recalled Products.

## IV. CONCLUSION AND PRAYER FOR RELIEF

Through the "Pet Food" allegation, the Plaintiffs seek to throw a net over every Evanger's product, claiming all are bad for every reason that the Recalled Products are bad.  However, the AC's well pled facts relate only to the Recalled Products.

Because the irreparably inaccurate allegation of "Pet Foods" infects all of the Plaintiffs' claims, the AC should be dismissed in its entirety; the pleading is neither plain nor concise and deprives the Defendants of fairly and accurately formulating an appropriate answer; the Defendants should not be required to parse each of the 473 allegations and separate the little wheat from the overwhelming amount of chafe.

**Wherefore,** the Defendants pray this Honorable Court dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

**DATED** this 13th day of November, 2017, at Tacoma, Washington.

**DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 9**

3070299.docx

Johnson Graffe Keay Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

JOHNSON, GRAFFE, KEAY, MONIZ & WICK, LLP

**s/ John C. Graffe**
**s/ Katherine A. Bozzo**
John C. Graffe, WSBA #11835
Katherine A. Bozzo, WSBA #42899
Johnson, Graffe, Keay, Moniz & Wick, LLP
2115 N. 30th Street, Ste 101
Tacoma, WA 98403
Telephone: (253) 572-5323
Fax: (253) 572-5413
E-mail:  graffej@jgkmw.com
             katyb@jgkmw.com

KNABE, KRONING & BEDELL
Gregory Bedell, *Admitted Pro Hac Vice*
20 South Clark Street, Ste 2301
Chicago, IL 60603
Telephone: (312) 977-9119
E-mail:  gbedell@kbbchicago.com

BROWN & WEGNER, LLP
William J. Brown, Jr., *Admitted Pro Hac Vice*
William E. Wegner, *Admitted Pro Hac Vice*
2603 Main Street, Suite 1050
Irvine, CA 92614
Telephone: (949) 705-0080
E-mail:  bill@brownwegner.com
             wwegner@brownwegner.com

**DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 10**

3070299.docx

Johnson Graffe Keay Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that the following is true and correct:

That on the date signed below, I electronically filed the foregoing, **DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| *Counsel for Plaintiffs*<br>Ms. Beth E. Terrell/Ms. Jennifer Rust Murray<br>Terrell Marshall Law Group, PLLC<br>936 N 34th St., Ste. 300<br>Seattle, WA  98103-8869<br>bterrell@terrellmarshall.com<br>jmurray@terrellmurray.com | ☐ U.S. Mail     ☐ Overnight<br>☐ Hand Delivery     ☑ E-mail/E-Service<br>☐ Facsimile     ☐ Messenger |
| *Pro Hac Vice Counsel for Plaintiffs*<br>Ms. Jessica J. Sleater<br>Andersen Sleater Sianni, LLC<br>1250 Broadway, 27th Floor<br>New York, NY  10001<br>Jessica@andersensleater.com | ☐ U.S. Mail     ☐ Overnight<br>☐ Hand Delivery     ☑ E-mail/E-Service<br>☐ Facsimile     ☐ Messenger |

Signed this 13th day of November, 2017, at Tacoma, Washington.

**s/ Beth Barker**
Beth Barker, Legal Assistant

DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT – 11

3070299.docx

Johnson Graffe Keay
Moniz & Wick LLP
2115 N. 30th St., Ste. 101
Tacoma, WA 98403
(253) 572-5323