HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NICOLE MAEL,

        Plaintiff,

    v.

EVANGER'S DOG AND CAT FOOD CO., INC.,

        Defendant.

CASE NO. C17-5469RBL

ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM

THIS MATTER is before the Court on Plaintiff Mael's Motion to Dismiss Defendant Evanger's defamation counterclaim against her. [Dkt. #56]. This putative class action arises from Mael's claim that her dogs got sick, and one ultimately died, from eating pentobarbital-tainted Evanger's "Hunk of Beef" dog food. Mael's story was in the news and it at least partly caused Evanger's to initiate a nationwide recall of its products.

Mael sued. Evanger's asserted defamation counterclaims based on a list of Mael's public statements about the cause of Talula's death. [Dkt. # 45]. Mael moved to dismiss and for sanctions. [Dkt. #46]. Before that motion was decided, Evanger's amended its counterclaim, this time identifying three (different) allegedly defamatory statements:

> a. On February 8, 2018, Mael stated, "Poisoning from the dog food. That's what killed her," in an interview with ABC7 news.
> b. On January 2, 2017, Mael stated, "Tito and Talula ate the most [food] and Talula passed away," in an interview with KATU News.
> c. On February 9, 2017, Mael participated in an interview with Helen Mann and Jeff Douglas of the Canadian Broadcasting Corporation, during which Mael stated: "And so [the veterinarians] basically just treated [my dogs] for a poison to get it out of their system and they were in the ICU overnight. Talula, of course passed away…. I think she ate the most. Her and Tito both eat a lot so I believe that they ate the most and that's why she passed away…. I can't believe that my dog passed away from that. You know she should have died from old age, not poisoned dog food…. I couldn't believe that something that I trusted, I thought I trusted you know, that that would be the death of my dog."

[Evanger's Amended Counterclaim Dkt. # 49].

Evanger's also sued its meat supplier, Bailey Farms, affirmatively alleging that the FDA's Michigan State University lab had confirmed that pentobarbital was in both Talula's stomach and in the Evanger's Hunk of Beef she had eaten. Evanger's alleged that the FDA later confirmed independently that some cans of Hunk of Beef contained pentobarbital. Evanger's sought damages from Bailey Farms based on these allegations.

Mael seeks dismissal of the defamation counterclaim. She argues that her statements do not and cannot support a defamation claim under the substantially similar defamation law of Illinois (where Evanger's is domiciled) or Washington (where the comments were made).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

Evanger's Response is a well-written, thorough, scholarly discussion of defamation law. It argues that Illinois and Washington law is the same, and that it need not demonstrate actual malice to succeed (but that it can).

Evanger's "core" factual allegation in support of Evanger's defamation claim receives less attention, but it is plain: Mael's public statements *"intentionally"* omitted material information about how Talula really died. Mael failed to admit that she had Talula euthanized. [*See* Response, Dkt. # 60 at 12]. Evanger's claims that Mael's incomplete, false story is "more

damaging" to Evanger's than the one it claims is true (and which it apparently wants to tell a jury); that *Mael* killed Talula—Mael decided to end her suffering, because a veterinarian told her the dog would not recover—and then she falsely (and maliciously) claimed that her dog "died from" eating pentobarbital-tainted Hunk of Beef.

It is hard to imagine that this more complete and accurate version of the story will persuade a jury that the food was not tainted, that Mael is lying, or that any claimed damages should be reduced because Mael herself is culpable because she chose to pull the plug. That is sort of like saying the *coyotes* technically killed the bleeding, suffering, dying deer on the highway, not the logging truck that ran over it. Except the coyotes presumably did not act in what they thought was the deer's best interest.

The efficacy of that approach[1] will await another day. But the claim that Mael's statements were "false" in a defamatory way because she did not admit to euthanizing[2] her dog is not plausible. As Evanger's acknowledges, "a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991). The "gist and sting" of the allegedly defamatory story is a question for the Court. *U.S. Mission Corp. v KIRO TV, Inc.*, 172 Wash. App. 767, 773 (2013). [Response Dkt. # 60 at 16-17].

Mael's adding to her interview the whole truth that Talula did not die right away, but because she was so sick Mael was forced to make the painful decision to euthanize her—*using*

---

[1] Evanger's seems to recognize that it can't really make this argument, but, in order preserve its defamation claim, argues it could if it wanted to.

[2] Evanger's emphasizes that Talula was euthanized with pentobarbital, which is not uncommon, but it was presumably injected into her bloodstream, not her stomach. The fact that the substance found in Hunk of Beef is commonly used to put pets down is not favorable to Evanger's.

1  *pentobarbital*—would not have any perceptible effect on the mind of any reasonable [listener]
 2  about what really happened.
 3      Mael's statements were substantially true, and they reflect Mael's belief and opinion
 4  about what happened to her dogs. Nor do Mael's statements include any "implication" that is
 5  false: her dogs got sick, and one died, because they ate tainted dog food. The "concealed"
 6  truth—Mael was forced to decide to put her dog down because it was irrevocably damaged by
 7  the pentobarbital—is not actionably different than what Mael told the news, as a matter of law.
 8      Mael's Motion to Dismiss Evanger's Defamation Counterclaim is GRANTED, and that
 9  counterclaim is DISMISSED with prejudice and without leave to amend.
10      IT IS SO ORDERED.
11      Dated this 16th day of May, 2019.

                                          *Ronald B. Leighton*
                                          Ronald B. Leighton
                                          United States District Judge