THE HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

8

NICOLE and GUY MAEL, NADINE VIGLIANO,
BRITNEY MOREA, CAROL CONWAY, ANGELA
BERTUCCI and TINA WIEPERT, on behalf of
themselves and all others similarly situated,

NO. 3:17-cv-05469-RBL

9

10

Plaintiffs,

**PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

11

vs.

12

13

EVANGER'S DOG AND CAT FOOD
CO., INC., NUTRIPACK, LLC, AGAINST THE GRAIN
PET FOODS, and SHER SERVICES COMPANY
INCORPORATED,

**Hearing Set on Motion Calendar:
June 12, 2020, 9:30 a.m.**

14

15

16

Defendants.

17

18

EVANGER'S DOG AND CAT FOOD CO., INC.,

19

Counterclaimant,

20

vs.

21

22

NICOLE MAEL,

23

Counterdefendant.

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1
2

**TABLE OF CONTENTS**

Page No.

3

I.    INTRODUCTION...................................................................................................... 1

4

II.   STATEMENT OF FACTS ......................................................................................... 2

5

      A.    Factual and procedural background................................................................ 2

6

      B.    The notice program was successful................................................................ 3

7

      C.    The Settlement Fund will provide complete relief to all Claimants................... 4

8
9

            1.    The Net Settlement Fund covers 100% of all approved claims
                  for veterinary expenses............................................................. 5

10

            2.    The Net Settlement Fund is sufficient to pay all Settlement
                  Class Members in cash for 100% of their verified product
                  purchases ................................................................................. 5

11
12
13

            3.    The Net Settlement Fund is sufficient to cover the costs of
                  direct mailing of pet food to Claimants who had no proof
                  of purchase and who would otherwise receive product
                  certificates................................................................................ 6

14
15
16

      D.    No Settlement funds will revert to Defendants.............................................. 6

17

      E.    The Settlement requires Defendants to change their business
            Practices.................................................................................................... 7

18
19

III.  AUTHORITY AND ARGUMENT ............................................................................. 7

20

      A.    Plaintiffs and Class Counsel have adequately represented the class................ 9

21

      B.    The Settlement is the result of arm's-length, non-collusive
            negotiations ............................................................................................... 9

22
23

      C.    The relief provided for the Class is adequate ................................................ 10

24

            1.    The relief provided by the Settlement is adequate in light of
                  the costs, risks, and delay of trial and appeal ......................... 10

25
26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

2.    Approved Claimants will receive cash payments
       reimbursing them for 100% of their veterinary
       expenses and product purchases, and Claimants
       who had no proof of purchase will receive direct
       mailing of products..................................................................12

3.    Class Counsel seek an award of attorneys' fees that
       represents a fraction of their total lodestar, which will
       be paid only after final approval............................................14

D.    The Settlement treats Class Members equitably relative to each other ..........15

E.    The Court-ordered Notice Program is constitutionally sound ..........................16

F.    The Settlement Class should be finally certified.................................17

G.    Class Counsel's requested fees and the Class Representatives'
       requested service awards should be approved.................................17

IV.   CONCLUSION ..................................................................17

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - ii
CASE NO. 3:17-CV-05469-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**TABLE OF AUTHORITIES**

**Page No.**

**FEDERAL CASES**

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ....................................................................... 15

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................... 16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................... 8

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2015) .................................................................... 15

*In re Hyundai and Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ......................................................................... 10

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ......................................................................... 10

*In re Pet Food Prods. Liab. Litig.*,
    Case No. 07-2867 (NLH), 2011 WL 1322878 (D. N.J. April 5, 2011) .............. 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ..................................................................... 8, 15

*Ortiz v. Fiberboard Corp.*,
    527 U.S. 815 (1999) ........................................................................................ 9

*Rawa v. Monsanto Co.*,
    934 F.3d 862, 866 (8th Cir. 2019) ................................................................. 11

*Retta v. Millenium Prods., Inc., et al.*,
    Case Nos. CV-15-1801 PSG AJWx, CV-16-3780 PSG AJWx, 2017 WL 5479637
    (C.D. Cal. Aug. 22, 2017) ........................................................................ 11, 15

*Rinky Dink, Inc. v. World Bus. Lenders*,
    No. C14-0268-JCC, 2016 WL 3087073 (W.D. Wash. May 31, 2016) .............. 11

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - iii
CASE NO. 3:17-CV-05469-RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).........................................................................12

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990)......................................................................14

**STATE STATUTES**

73 Pa. Stat. § 201-9.2(a)..................................................................................14

815 Ill. Comp. Stat. 505/10a ...........................................................................14

N.J. Stat. Ann. § 56:8-19..................................................................................14

N.Y. Gen. Bus. Law § 349 ................................................................................14

RCW 19.86.090 ................................................................................................14

**FEDERAL RULES**

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................16

Fed. R. Civ. P. 23(e)(1).....................................................................................16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.....................................9

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

## I.  INTRODUCTION

Plaintiffs Nicole and Guy Mael, Nadine Vigliano, Britney Morea, Angela Bertucci and Tina Wiepert request the Court grant final approval of the class action Settlement that they reached with Defendants Evanger's Dog and Cat Food Co., Inc. ("Evanger's"), Nutripack, L.L.C., Against the Grain Pet Foods, and Sher Services, Co. Plaintiffs and their counsel believe the Settlement—which requires Defendants to pay $545,000, to continue testing its pet food, and to change its business practices, including its advertising—is fair, adequate, and reasonable, and in the best interests of the Settlement Class.[1]

The Settlement is an excellent result for the Settlement Class. The non-reversionary Settlement Fund will be used to provide substantial refunds to Settlement Class Members whose product purchases were verified or who incurred approved costs associated with veterinarian bills from pets that experienced illness related to pentobarbital poisoning after consuming the recalled pet foods. Indeed, now that the claims period has concluded, the parties have determined the Net Settlement Fund is sufficient to pay 100% of all approved veterinarian bills and cash refunds of 100% to all verified purchasers. The Settlement also provides that Claimants who have no proof of purchase are entitled to three cans of Defendants' pet food, which the parties agree can be mailed directly to Claimants instead of providing product certificates. Finally, the Settlement requires Defendants to significantly change their business practices. For two years, Defendants must subject their Hand-Packed Products to random independent third-party testing, at their own expense up to $5,000 per year, every three months for two years. And Defendants agreed to stop labeling their pet food as "human grade," unless they verify their compliance with FDA requirements.

Because the requirements of Federal Rules of Civil Procedure 23(e) and (h) are satisfied, Plaintiffs request the Court grant final approval of the Settlement by: (1) approving

---

[1] Unless otherwise defined, capitalized terms have the same meaning as ascribed to them in the Settlement Agreement. Dkt. No. 116-1 (Settlement Agreement).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

the Settlement Agreement; (2) determining that adequate notice was provided to the Settlement Class; (3) finally certifying the Settlement Class; (4) granting Class Counsel $295,000 in attorneys' fees and costs; and (5) approving service awards for the Class Representatives not to exceed $2,500 each.

## II. STATEMENT OF FACTS

**A.    Factual and procedural background.**

Plaintiffs brought this class action alleging they paid a premium price for meat-based pet foods based on Defendants' advertising of their pet foods as "human grade," produced in USDA-inspected facilities or with USDA-inspected meats, and "people food for pets." Plaintiffs further allege that three of Defendants' products produced during the class period were eventually recalled because they contained pentobarbital (the "Recalled Products") that injured some of Plaintiffs' pets and caused the death of one. Dkt. No. 31 at p. 1.

Defendants moved to dismiss twice and the parties engaged in an early mediation with the Honorable Peter D. Lichtman (Ret.), which was not successful. After Defendants' motions to dismiss were denied, the parties engaged in substantial discovery, including responding to each other's written discovery and exchanging documents. Dkt. No. 116 ¶ 11–14. Plaintiffs also served third-party subpoenas and made freedom of information act requests. By the time the parties agreed to resume settlement talks—this time with Magistrate Judge Creatura— Plaintiffs had analyzed approximately 40,000 pages of documents. *Id*. ¶ 13.

The parties participated in three in-person mediation sessions with Judge Creatura. *Id*. ¶ 15. After the third mediation session, the parties actively continued their negotiations with Judge Creatura's assistance and agreed to the final terms of the Settlement on October 18, 2019. *Id*. ¶ 9; *see also* Dkt. No. 116-1 (Settlement Agreement).

On October 24, 2019, the Court entered an order preliminarily approving the class action Settlement. Dkt. No. 120. The Court entered an amended order the next day. Dkt. No. 121. Plaintiffs refer to this amended order as the Preliminary Approval Order.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**B.     The notice program was successful.**

After the Court granted preliminary approval of the Settlement, the Settlement Administrator, CPT Group, commenced the notice program. *See* Declaration of Ani S. Sarich.[2] The notice program included direct notice by email to any person identified in Evanger's records as having purchased the Recalled Products during the class period. Online retailers Amazon.com, Chewy.com, and PetFlow also identified consumers who purchased the Recalled Products during the class period and email notice was sent to those consumers as well. Evanger's emailed the notice to consumers who purchased the products through Evanger's and PetFlow's websites. *See* Sarich Decl. Amazon.com and Chewy.com emailed notice to consumers who purchased the Recalled Products through their respective websites. *See* Declaration of Sara Rawson; Declaration of Roberto Wong.

Collectively, CPT Group, Amazon.com, and Chewy.com sent the notice by email to 4,489 Class Members. Sarich Decl. ¶¶ 20, 22; Rawson Decl. ¶ 4; Wong Decl. ¶4. All of the email notices sent by Amazon.com and Chewy.com were delivered successfully. Rawson Decl. ¶ 4; Wong Decl. ¶4. Of the 333 email notices CPT Group sent, just nine bounced. Sarich Decl. ¶¶ 20, 22. CPT Group conducted a National Change of Address search on those individuals and sent Notice Postcards by U.S. Mail; there are no undeliverable Summary Notice Postcards. *Id*. ¶¶ 23-25. The direct notice program therefore reached 100% of the individuals for whom the parties had contact information.

In addition to direct notice, CPT Group implemented an online media notice effort that included digital banner advertisements designed to reach the target audience by serving a total of 23,759,492 gross ad impressions. *Id*. ¶ 14. This digital media program was designed to reach 87% of the target audience with direct notification reaching approximately 1% of the target audience, for a total reach of 87.9%. *Id*. ¶ 17-18. And it was successful. *Id*. ¶ 18. CPT

---

[2] CPT Group also mailed all required notices under the Class Action Fairness Act. Sarich Decl. ¶ 4.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 3
CASE NO. 3:17-CV-05469-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1
2
Group reports that it received 52,977 clicks on these banner advertisements, which then redirected the consumer to the Settlement Website. *Id.* ¶ 15.

3
4
5
6
7
8
9
CPT Group established both a toll-free telephone number and a case-specific email address through which members of the Settlement Class could obtain the Notice, including information about the claims process. Sarich Decl. ¶¶ 9-10. CPT Group also established a case website where Settlement Class Members could access relevant documents and submit claims. *Id.* ¶ 11-12. CPT Group received 118 calls to the case telephone support line, responded to 114 emails submissions, and the Settlement Website received more than 166,092 views. *Id.* ¶¶ 9-12.

10
11
12
13
14
15
16
17
18
19
20
The deadline for submitting claims was April 8, 2019. A total of 5,581 Settlement Class members submitted claims. Sarich Decl. ¶ 29. As of May 22, 2020, 151 claims had been approved for reimbursement of cash purchases totaling over $39,567. *Id.* ¶¶ 38-39. CPT Group also received 4,353 claims from households (representing 4,691 claimants) who did not provide proof of purchase. *Id.* ¶ 29. Each of these households is entitled to receive three cans of Evanger's dog food. The estimated value of the three cans is $8.10. Declaration of Jennifer Rust Murray in Support of Final Approval ("Murray Final Approval Decl.") ¶ 2. CPT Group also received forty claims for reimbursement of veterinary bills. Five of these claims, totaling $8,332.81, were approved. *Id.* ¶¶ 34-36. CPT Group received 20 claims it has identified as deficient and is still processing. *Id.* ¶ 32. CPT Group will file a supplemental declaration once the deficiencies have been resolved.

21
22
23
The deadline for opting out of or objecting to the Settlement was also April 8, 2019. No Settlement Class Members have objected and one person submitted an untimely opt-out request that CPT Group denied. *Id.* ¶¶ 26-28.

24
**C.    The Settlement Fund will provide complete relief to all Claimants.**

25
26
27
The Settlement requires Defendants to establish a non-reversionary Settlement Fund of $545,500 to pay Settlement Class Members' approved veterinary expenses, make cash

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 4
CASE NO. 3:17-CV-05469-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

payments to Settlement Class Members who purchased the Recalled Products and opt for a cash payment; and to pay settlement administration costs, attorneys' fees and litigation expenses, and service awards to Plaintiffs approved by the Court. Settlement Agreement §§ 1.36, 2.2. If approved by the Court, these amounts include $150,000 for Settlement Administration Costs, $295,000 for attorneys' fees and costs, and service awards of $2,500 to each Plaintiff. *Id*. §§ 1.7; *see also* Dkt. No. 127 (Plaintiffs' Motion for Attorneys' Fees, Costs and Service Awards).

Now that the claims period has closed, the parties have determined the Settlement Fund can provide more relief to Settlement Class Members than bargained for, subject to the Court's approval.

1. <u>The Net Settlement Fund covers 100% of all claims for approved veterinary expenses.</u>

Pursuant to the Settlement Agreement, Settlement Class Members whose pets got sick after eating the Recalled Products and who submitted a claim are entitled to receive an award for their verified veterinary expenses. Settlement Agreement §§ 2.2(f), 2.4(a). CPT received 40 requests for reimbursement of veterinary expenses. Sarich Decl. ¶ 34. The parties met and conferred regarding these claims and jointly agreed to accept five requests. *Id*. ¶ 35. Three requests were sent to a neutral veterinarian retained by the parties for further review, none of which were approved. *Id*. The remaining 32 were denied due to no verifiable proof of purchase and/or no supporting documentation from a veterinarian demonstrating illness related to pentobarbital poisoning. *Id*.

The total value of the five accepted out-of-pocket requests is $8,332.81. *Id*. ¶ 36. All of these requests will be paid in full from the Settlement Fund.

2. <u>The Net Settlement Fund is sufficient to pay all Settlement Class Members in cash for 100% of their verified product purchases.</u>

Settlement Class Members who purchased Recalled Products online could file claims electing to receive a check in the amount of 25% of their purchases or a product certificate for

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 5
CASE NO. 3:17-CV-05469-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

50% of their purchase amount. *Id*. §§ 2.2(d), (e), 2.3, 2.4(b). The Settlement Agreement

further provides that if any funds remain after paying these amounts, the remaining funds will

be distributed to Settlement Class Members proportionally based on the total amount of their

verified purchases up to 100%. *Id*. § 2.4(b)(ii). As of May 22, 2020, CPT Group approved 151

claims for reimbursement of product purchases. Sarich Decl. ¶ 37.

     The parties have determined the Settlement Fund is sufficient to pay all 151 claims in

cash for 100% of their verified purchases, totaling $39,567.57. Sarich Decl. ¶ 39. No

Settlement Class Members will need to be paid in product certificates. If approved by the

Court, Class Counsel will notify the Claimants who requested product certificates that they will

be paid in cash. Murray Final Approval Decl. ¶ 3.

     3.   <u>The Net Settlement Fund is sufficient to cover the costs of direct mailing of pet food to Claimants who had no proof of purchase and who would otherwise receive product certificates.</u>

     The Settlement provides that Claimants who have no proof of purchase are entitled to

a certificate that allows them to obtain at no cost three cans of Evanger's or Against the Grain

products from a retailer. Settlement Agreement § 2.3(b).

     In light of Covid-19 and the stay at home orders in effect across the country, the

parties request the Court approve direct mailing of the products valued at $8.10 to

approximately 4,353 households (representing 4,691 Claimants), instead of providing

Claimants with product certificates they would have to redeem in person. The Net Settlement

Fund is sufficient to cover these mailing costs and will allow Claimants to obtain the benefits

of the Settlement while staying safe at home. Murray Final Approval Decl. ¶ 3. Defendants will

provide the Court with a declaration confirming the shipments occurred and substantiating

any shipping costs. *Id.* ¶ 4.

**D.   No Settlement funds will revert to Defendants.**

     If any funds remain after allocation of the cash awards set forth above and the funding

of the direct product mailings, the remaining amounts shall be distributed in *cy pres* to the

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 6
CASE NO. 3:17-CV-05469-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

North Shore Animal League of America. Settlement Agreement § 2.4(b)(iv). A "*cy pres* remedy must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members ...." *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-21 (9th Cir. 2012) (citation omitted). North Shore Animal League America satisfies these criteria because it operates no-kill animal shelters across the country.

**E.      The Settlement requires Defendants to change their business practices.**

Defendants have also agreed to significant non-monetary relief, designed to protect all Settlement Class Members and remediate the alleged false and misleading advertising cited in the Action. Defendants (i) will only use the term "human grade" in their advertising if they comply with the voluntary criteria established by the Association of American Feed Control Officials ("AAFCO"); (ii) will no longer use the phrase "people food for pets"; (iii) will no longer produce videos showing people eating their pet foods; (iv) will inform their retailers by letter of this Settlement and these advertising restrictions; (v) will provide Plaintiffs' counsel with a letter confirming compliance with all FDA requirements regarding supplier and ingredient safety for any of their Hand Packed Products; and (vi) will subject their Hand Packed Products to random independent third-party testing, at their own expense of up to $5,000 per year, every three months for the next two years. Settlement Agreement § 2.1. One month after the Final Settlement Date, Defendants will also file a verification with the Court affirming their compliance with these and other Settlement terms. *Id.* § 2.1(f).

### III.  AUTHORITY AND ARGUMENT

Under Rule 23(e)(2), the Court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering whether:

>     (A)   the class representative and class counsel have adequately
>           represented the class;
>
>     (B)   the proposal was negotiated at arm's length;

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

(C)  the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

The amendment to Rule 23 adopting these factors took effect on December 1, 2018, so there is no binding authority addressing them yet. But the factors are largely consistent with those previously identified by the Ninth Circuit as guides to determining whether a proposed settlement is fair, adequate, and reasonable. The factors previously discussed by the Ninth Circuit are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004). The Ninth Circuit has characterized these factors as "guideposts" and explained that "[d]eciding whether a settlement is fair" is "best left to the district judge who can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings—the whole gestalt of the case." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

**A.      Plaintiffs and Class Counsel have adequately represented the class.**

The Court previously found that Plaintiffs have no conflicts of interest with the other Settlement Class Members and have demonstrated their commitment to the class by actively participating in the litigation. Dkt. No. 121 at 3:21-25. Nothing has changed. Plaintiffs and Class Counsel have continued to vigorously represent the class and have no conflicts of interest with any Class Members. Each of the Class Representatives responded to interrogatories and requests for production, and they also assisted in drafting the complaints and review of other motions and briefs throughout the litigation. Dkt. No. 116 ¶ 14; Dkt. No. 129 ¶¶ 11-18.

**B.      The Settlement is the result of arm's-length, non-collusive negotiations.**

The parties negotiated the Settlement at arm's length, during several months of settlement negotiations that included three in-person mediation sessions with a member of this Court. "[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining." *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 852 (1999). The negotiations were conducted with the assistance of Magistrate Judge Creatura, an experienced judge and mediator, who facilitated the in-person mediations and the negotiations that followed. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("the involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

Class Counsel negotiated the Settlement with the benefit of many years of prior experience and a solid understanding of the facts and law of this case. *See* Dkt. Nos. 116 and 117. Class Counsel have extensive experience litigating and settling class actions, including consumer protection and false labeling claims in particular. *Id*. They believe the Settlement is

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

fair, reasonable, adequate, and in the best interests of the Settlement Class as a whole. *See* Dkt. No. 116 ¶ 16; Dkt. No. 117 ¶ 16.

The Ninth Circuit has identified "red flags" that may suggest that plaintiffs' counsel allowed pursuit of their own self-interest to infect settlement negotiations, including when counsel receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from the class funds, or the parties agree that any fees not awarded will revert to defendants rather than be added to the class fund. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir. 2019). None are present here. Because Class Counsel will be paid from the same Settlement Fund as Settlement Class Members, they were incentivized to negotiate the largest fund possible. None of the Settlement Fund will revert to Defendants; any requested fees or Service Awards not approved by the Court will be distributed to Settlement Class Members. Settlement Agreement § 2.7.

**C.      The relief provided for the Class is adequate.**

In determining whether the relief provided to the Settlement Class is adequate, courts must balance the strength of the plaintiff's case against the risk, expense, complexity, and likely duration of further litigation. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). Here, Defendants' agreement to pay $545,500 to settle this case is more than adequate given the risks and delay of continued litigation.

1.      <u>The relief provided by the Settlement is adequate in light of the costs, risks, and delay of trial and appeal.</u>

The parties have been litigating this action for nearly three years and have sufficient information to make an informed decision with respect to the Settlement. Dkt. No. 116 ¶¶ 9–15; Dkt. No. 117 ¶¶ 3–5. Before reaching agreement on a settlement, both parties responded to interrogatories and requests for production. Dkt. No. 116 ¶ 12. Through these discovery requests, Plaintiffs obtained and analyzed approximately 40,000 pages of documents,

including sales data, ingredient lists, FDA reports, product testing reports, communications

with consumers, and inspection data for Defendants' products and facilities. *Id*. Plaintiffs had

engaged in sufficient discovery to assess the strength of their claims and the risks of continued

litigation. As a result, "the parties had enough information to make an informed decision

about the strength of their cases and the wisdom of settlement." *Rinky Dink, Inc. v. World Bus.

Lenders*, No. C14-0268-JCC, 2016 WL 3087073, at *3 (W.D. Wash. May 31, 2016).

The monetary benefits of the Settlement alone, which provide for 100% of actual

damages for Settlement Class Members with verified veterinary expenses and product

purchases, exceed similar settlements approved by other courts. *See, e.g. In re Pet Food

Prods. Liab. Litig.*, Case No. 07-2867 (NLH), 2011 WL 1322878, at *3 (D. N.J. April 5, 2011)

(approving class action settlement of $250,000 in mislabeled and contaminated pet food case

where product purchase claimants received 43.6% of their estimated actual damages); *Rawa

v. Monsanto Co.*, 934 F.3d 862, 866 (8th Cir. 2019) (affirming district court's approval of class

action settlement providing claimants with a 50% refund for mislabeled products); *Retta v.

Millenium Prods., Inc., et al.*, Case Nos. CV-15-1801 PSG AJWx, CV-16-3780 PSG AJWx, 2017

WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017) (approving class action settlement providing

approximately 21% of the estimated potential recovery). Indeed, the Settlement Fund will be

able to provide more monetary relief to Claimants than the parties anticipated—all Claimants

with verified veterinary expenses will be reimbursed for 100% of those costs and, instead of

providing verified product purchaser Claimants with either 25% of their product purchases in

cash or a product certificate for 50% of their purchase amount, the Settlement Fund will

refund all approved product purchasers 100% in cash. *See* Murray Decl. ¶ 3; *see also

Settlement Agreement § 2.4(b)(ii) (providing remaining funds "will be distributed to

Settlement Class Members proportionally based on the total amount of their verified

purchases up to 100%."). In addition to these monetary benefits, approximately 4,353

households whose purchases were not verified will receive three cans of dog food valued at

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1  $8.10, which the parties can mail directly to Claimants with the Court's approval. *See* Murray

2  Decl. ¶¶ 2-3.

3      The Settlement also provides benefits to all Settlement Class Members in the form of

4  significant injunctive relief that requires Defendants to stop representing that their products

5  are "People Food for Pets," cease using the term "human grade" unless they comply with

6  independent standards and guidelines for use of the term, submit to additional testing on

7  several specific pet food products, and verify their compliance with FDA requirements

8  regarding supplier and ingredient safety for the products bought by Settlement Class

9  Members. Settlement Agreement § 2.1.

10     Plaintiffs have been confident in the merits of their case, but are well aware that

11  litigation can be unpredictable and that Defendants intended to aggressively pursue defenses

12  available to them. Moreover, Plaintiffs still had several hurdles to clear before resolution

13  through further litigation, including additional discovery, class certification, dispositive

14  motions likely to be filed by both parties, and ultimately trial and any appeal that followed.

15  And even assuming Plaintiffs successfully certified the class, Defendants could have moved to

16  decertify or appeal after trial. Plaintiffs therefore faced the ongoing risk that individual

17  Settlement Class Members would have filed their own lawsuits or that any payments to the

18  Settlement Class would be substantially delayed by appeals.

19     Litigating this case to trial and through any appeals would be expensive and time-

20  consuming and would present risks to both parties. The Settlement, by contrast, provides

21  prompt and certain relief for Settlement Class Members. *See Rodriguez v. West Publ'g Corp.*,

22  563 F.3d 948, 966 (9th Cir. 2009).

23     2.  <u>Approved Claimants will receive cash payments reimbursing them for 100% of their veterinary expenses and product purchases, and Claimants who had no proof of purchase will receive direct mailing of products.</u>

24

25     Rule 23(e)(2)(C)(ii) requires consideration of the effectiveness of any proposed method

26

27  of distributing relief to the class, including the method of processing class-member claims.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1    The Settlement Agreement provides that Settlement Class Members whose pets got a

2  pentobarbital related illness after eating the Recalled Products and who submitted a claim are

3  entitled to receive an award for their approved veterinary expenses. Settlement Agreement

4  §§ 2.2(f), 2.4(a). The five Settlement Class Members with verified veterinary expenses will be

5  mailed a check reimbursing them for 100% of their vet bills, totaling $8,332.81. Sarich Decl.

6  ¶¶ 34-36.

7    Settlement Class Members who purchased Recalled Products online could file claims

8  electing to receive a check in the amount of 25% of their purchases or a product certificate for

9  50% of their purchase amount. *Id*. §§ 2.2(d), (e), 2.3, 2.4(b). The Settlement Agreement

10 further provides that if any funds remain after paying these amounts, the remaining funds will

11 be distributed to Settlement Class Members proportionally based on the total amount of their

12 verified purchases up to 100%. *Id*. § 2.4(b)(ii). The parties have determined the remaining

13 funds should be sufficient to pay all 151 Settlement Class Members who purchased Recalled

14 Products online in cash for 100% of their verified purchases, totaling $39,567. Sarich Decl.

15 ¶ 39. No Settlement Class Members will need to be paid in product certificates. If approved by

16 the Court, Class Counsel will notify the Claimants who requested product certificates that they

17 will be paid in cash. Murray Final Approval Decl. ¶ 3.

18    Finally, the Settlement provides that Claimants who have no proof of purchase are

19 entitled to a certificate that allows them to obtain at no cost three cans of Evanger's or

20 Against the Grain products from a retailer. Settlement Agreement § 2.3(b). In light of Covid-19

21 and the stay at home orders in effect across the country, however, the parties request that

22 the Court permit Evanger's to mail the three cans of product directly to the 4,353 Claimants

23 whose claims lack proof of purchase. The total value of the products to the Class is $35,259

24 ($8.10 x 4,353 households). The Net Settlement Fund should be sufficient to cover these

25 mailing costs and will allow Claimants to obtain the benefits of the Settlement while staying

26 safe at home. Murray Final Approval Decl. ¶ 4.

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1

2

3.      <u>Class Counsel seek an award of attorneys' fees that represents a fraction of their total lodestar, which will be paid only after final approval.</u>

3

4      Under Rule 23(e)(2)(C)(iii) the Court should consider "the terms of any proposed award

5 of attorney's fees, including timing of payment." The Settlement Agreement provides that

attorneys' fees and costs shall be paid from the Settlement Fund in an amount approved by

6 the Court. Settlement Agreement § 2.6.

7      Class Counsel seek a fee award of $295,000, which is approximately 29% of Class

8 Counsel's total lodestar of more than $1 million. *See* Dkt. No. 127, p. 2 n.1. The requested fee

9 award also includes costs. Class Counsel do not seek a separate award of the more than

10 $28,440 in out-of-pocket costs they incurred prosecuting this action. When costs are

considered, Class Counsel seek a fee award of $266,560 ($295,000 - $28,440 = $266,560),

11 which is less than 27% of their total lodestar ($266,560 / $1,009,017 = .264). Courts generally

12 use the lodestar method to award fees under statutes like Washington's Consumer Protection

13 Act and the other consumer protection statutes at issue, which provide for fee shifting. *See,*

14 *e.g., Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)

15 (explaining that "statutory awards of attorneys' fees are subject to 'lodestar' calculation

16 procedures"); RCW 19.86.090 (providing for recovery of "actual damages sustained... together

17 with the costs of the suit, including a reasonable attorneys' fee"); *and see* 815 Ill. Comp. Stat.

18 505/10a (providing that a successful plaintiff may obtain an award of attorneys' fees); 73 Pa.

19 Stat. § 201-9.2(a) (providing for recovery of "actual damages or one hundred dollars ($100),

20 whichever is greater" and that the court may also award to the plaintiff "costs and reasonable

21 attorney fees"); N.J. Stat. Ann. § 56:8-19 (providing for an award of "reasonable attorneys'

22 fees, filing fees and reasonable costs of suit"); N.Y. Gen. Bus. Law § 349 (providing for

23 "reasonable attorney's fees to a prevailing plaintiff"). The lodestar-multiplier method confirms

24 the propriety of the requested fee here as set forth in Plaintiffs' Motion for Attorneys' Fees,

25 Costs and Service Awards. *See* Dkt. No. 127.

26

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

In addition, fees will be paid only after the Settlement is finally approved by the Court, the time for any appeal has elapsed, or any appeal has been resolved, and the Settlement has taken effect. And the Settlement Agreement contains no "clear sailing" provision. *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (a clear sailing provision is "an arrangement where defendant will not object to a certain fee request by class counsel."). Though free to do so, no Class Member has objected to the award sought by Class Counsel.

**D.      The Settlement treats Class Members equitably relative to each other.**

Under Rule 23(e)(2)(D), the Court must consider whether the Settlement Agreement treats Settlement Class Members equitably relative to each other. Each Settlement Class Member's share will be based on his or her actual damages. Settlement Class Members with verified product purchases will be reimbursed for 100% of their actual damages, while Settlement Class Members without proof of purchase will receive products instead of cash. Settlement Agreement §§ 2.2-2.3. This settlement structure mirrors structures approved as fair and reasonable in prior food mislabeling cases. *See, e.g., Retta*, 2107 WL 5479637 (approving settlement fund from which class members could claim differing amounts in either cash or product vouchers based on whether they could provide proof of purchase); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 607–609 (9th Cir. 2018) (affirming certification of settlement class and final approval of settlement where settlement class members with weaker claims likely benefitted from inclusion in a class with members who had stronger claims); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 225 (N.D. Ill. 2015) (when some class members have stronger claims than others, it is appropriate to provide larger settlement awards to those class members.). Similarly, any Settlement Class Members whose pets may have required veterinary care due to illness related to pentobarbital poisoning experienced additional damages as a result of Defendants' failure to honor their marketing promises, and it is therefore fair and reasonable to allow them to claim additional compensation from the Settlement Fund.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

**E.     The Court-ordered Notice Program is constitutionally sound.**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

The Preliminary Approval Order directed that email notice be sent to known members of the Class. Preliminary Approval Order ¶¶ 13-17. The Settlement Administrator, Amazon.com, and Chewy.com completed the Notice Plan as directed, including completing advanced address searches for Settlement Class Members whose emails bounced or were undeliverable, followed by mailing of a postcard notice. Sarich Decl. ¶¶ 15-20; Rawson Decl. ¶ 4; Wong Decl. ¶ 4. Direct notice reached 100% of the known Settlement Class Members for whom the parties had contact information. Sarich Decl. ¶¶ 19-25; Rawson Decl. ¶ 4; Wong Decl. ¶ 4; *cf. Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1046-57 (9th Cir. 2019) (due process requires identifying additional means of notice reasonably calculated to reach class members whose notices were undeliverable)

In addition, CPT Group established and maintained a publicly available website containing documents relevant to the Settlement and responses to frequently asked questions and provided a toll-free telephone number and email address Settlement Class Members could use to contact the Administrator. Sarich Decl. ¶¶ 9-12; Rawson Decl. ¶ 4; Wong Decl. ¶ 4. CPT received 118 calls and 114 emails and tracked more than 166,092 views of the Settlement Website. Sarich Decl. ¶¶ 9-12.

CPT Group also implemented a 10-week programmatic digital banner advertising campaign on the Google Display Network, general programmatic ad exchanges, as well as ad

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 16
CASE NO. 3:17-CV-05469-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

placements on the following social media platforms: Facebook Audience Exchange Ad

Network, Instagram, and Twitter. Sarich Decl. ¶¶ 14-18. This was designed to reach

Settlement Class members for whom the parties did not have contact information. CPT Group

estimates that the direct notice combined with the online media program reached 87.9% of

the Class. *Id*. ¶ 17. The notice program satisfied Rule 23 requirements and due process.

**F.      The Settlement Class should be finally certified.**

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class

under Federal Rule of Civil Procedure 23(a) and (b)(3). Dkt. No. 121 ¶¶ 1-4. Nothing has

changed. The requirements of both Rule 23(a) and (b)(3) remain satisfied. For all of the

reasons set forth in the Court's Preliminary Approval Order, Dkt. No. 121, and Plaintiffs'

motion to approve notice to the Settlement Class, Dkt. No. 115 at 9-13, the Court should

finally certify the Settlement Class.

**G.      Class Counsel's requested fees and the Class Representatives' requested service
         awards should be approved.**

Not one Settlement Class Member objected to Class Counsel's request for reasonable

attorneys' fees, and service awards to Class Representatives, Guy Mael, Nicole Mael, Nadine

Vigliano, Britney Morea, Angela Bertucci and Tina Wiepert. For all the reasons set forth in

Plaintiffs' Motion for Attorneys' Fees, Costs and Service Awards, Dkt. No. 127, Class Counsel

respectfully request that the Court award (1) Class Counsel $295,000 in attorneys' fees and

costs; and (2) Class Representative service awards in the amount of $2,500 each in recognition

of their service to the Settlement Class.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court enter an Order (1)

approving the Settlement Agreement; (2) determining that adequate notice was provided to

the Settlement Class; (3) finally certifying the Settlement Class; (4) granting Class Counsel an

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

attorneys' fees and costs award of $295,000; and (5) approving service awards in the amount of $2,500 to each Class Representative.

RESPECTFULLY SUBMITTED AND DATED this 22nd day of May, 2020.

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Jennifer Rust Murray, WSBA #36983
Beth E. Terrell, WSBA #26759
Email:  bterrell@terrellmarshall.com
Jennifer Rust Murray, WSBA #36983
Email:  jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Jessica J. Sleater, *Admitted Pro Hac Vice*
Email:  jessica@andersensleater.com
ANDERSEN SLEATER SIANNI LLC
1250 Broadway, 27th Floor
New York, New York 10001
Telephone: (646) 599-9848

*Attorneys for Plaintiffs*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

<u>CERTIFICATE OF SERVICE</u>

I, Jennifer Rust Murray, hereby certify that on May 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John C. Graffe, WSBA #11835
Email:  johng@jgkmw.com
Katherine A. Bozzo, WSBA #42899
Email:  katyb@jgkmw.com
Beth Barker
Email: bethb@jgkmw.com
JOHNSON, GRAFFE, KEAY, MONIZ & WICK, LLP
925 Fourth Avenue, Suite 2300
Seattle, Washington 98104
Telephone: (206) 223-4770
Facsimile: (206) 386-7344

Brennen J. Johnson, WSBA #51665
Email: brennenj@jgkmw.com
JOHNSON, GRAFFE, KEAY, MONIZ & WICK, LLP
2115 North 30th Street, Suite 101
Tacoma, Washington 98403
Telephone: (253) 572-5323
Facsimile: (253) 572-5413

Gregory A. Bedell, *Admitted Pro Hac Vice*
Email: gbedell@kkbchicago.com
KNABE, KRONING & BEDELL
33 North Dearborn Street, Suite 1010
Chicago, Illinois 60602
Telephone: (312) 977-9119
Facsimile: (312) 977-9009

*Attorneys for Defendants*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 19
CASE No. 3:17-CV-05469-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1    DATED this 22nd day of May, 2020.

2                              TERRELL MARSHALL LAW GROUP PLLC

3                              By:   /s/ Jennifer Rust Murray, WSBA #36983

4                                    Jennifer Rust Murray, WSBA #36983
                                     Email:  jmurray@terrellmarshall.com
5                                    936 North 34th Street, Suite 300
                                     Seattle, Washington 98103
6                                    Telephone: (206) 816-6603
                                     Facsimile: (206) 319-5450
7

8                              *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 20
CASE NO. 3:17-CV-05469-RBL